

**FILED**

OCT 1 4 2022

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)
v. )
)
ILLINOIS BELL )
TELEPHONE COMPANY, LLC, )
d/b/a AT&T Illinois )

**1:22-cr-00525**
**Judge Jorge L. Alonso**
**Magistrate Judge Cox**

## DEFERRED PROSECUTION AGREEMENT

This Deferred Prosecution Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR. (the "government"), and defendant Illinois Bell Telephone Company, LLC, d/b/a AT&T Illinois ("AT&T Illinois"), by its undersigned representative and attorneys, pursuant to authority granted by the Board of Directors of AT&T Inc., is made pursuant to the terms and conditions set forth below.

### Criminal Information and Acceptance of Responsibility

1. AT&T Illinois acknowledges and agrees that the government will file the accompanying Information in the United States District Court for the Northern District of Illinois charging AT&T Illinois with use of an interstate facility in order to promote and facilitate unlawful activity, namely legislative misconduct, in violation of Title 18, United States Code, Section 1952(a)(3). AT&T Illinois knowingly waives any right to indictment on this charge, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b).

2. AT&T Illinois admits, accepts, and acknowledges that it is responsible under United States law for the acts of its current and former officers, employees,

and agents as charged in the Information and as set forth in the Statement of Facts, attached as Attachment A and incorporated by reference into this Agreement, and that the facts alleged in the Information and described in the Statement of Facts are true and accurate. Should the government pursue the prosecution that is deferred by this Agreement, AT&T Illinois agrees that it will neither contest the admissibility of nor contradict the Statement of Facts in any such proceeding, including any trial, guilty plea or sentencing proceeding.

3.      It is further understood that the government shall file this Agreement in a public Court file and may disclose this Agreement to the public.

### Term of the Agreement

4.      This Agreement shall have a term of two (2) years from the date on which the fully executed Agreement is filed with the Court (the "Term"), except for specific provisions below that specify a longer period. AT&T Illinois agrees, however, that in the event the government determines, in its sole discretion, that AT&T Illinois has knowingly violated any provision of this Agreement or has failed to completely perform or fulfill each of its obligations under this Agreement, an extension or extensions of the Term may be imposed by the government, in its sole discretion, for up to a total additional time period of one year, without prejudice to the government's right to proceed as provided in the breach provisions of this Agreement below. Any extension of the Agreement extends all terms of this Agreement, including the terms of the reporting requirement in Attachment C, for an equivalent period. Conversely, in the event the government finds, in its sole discretion, that there exists a change in circumstances sufficient to eliminate the need for the reporting requirement in

Attachment C, the Agreement may be terminated early. In such event, AT&T Illinois's cooperation obligations described below shall survive until the date upon which all such investigations and prosecutions are concluded.

### Relevant Considerations

5.    The government enters into this Agreement based on the individual facts and circumstances presented by this case, including the nature and seriousness of the offense conduct, AT&T Illinois's ongoing cooperation described more fully below, and its remedial measures and operational improvements also described more fully below.

### Cooperation

6.    AT&T Illinois and other subsidiaries of AT&T Inc. have cooperated with the government, including by making factual presentations to the government.

7.    AT&T Illinois and other subsidiaries of AT&T Inc. shall continue to cooperate fully with the government in any and all matters relating to the conduct described in this Agreement and the attached Statement of Facts and other related conduct under investigation by the government at any time during the Term, until the later of the date the Term ends or the date upon which all investigations and prosecutions arising out of such conduct are concluded. At the request of the government, AT&T Illinois shall also cooperate fully with other law enforcement and regulatory authorities and agencies in any investigation of AT&T Illinois, its subsidiaries or any of its present or former officers, directors, employees, agents, lobbyists and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and the attached Statement of Facts and other

3

related conduct under investigation by the government at any time during the Term. The cooperation of AT&T Illinois or other subsidiaries of AT&T Inc. pursuant to this paragraph is subject to applicable law and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine; however, AT&T Illinois must provide to the government a log of any information or cooperation that is not provided based on an assertion of law, regulation, privilege, or attorney work product, and AT&T Illinois bears the burden of establishing the validity of any such assertion. AT&T Illinois agrees that its cooperation shall include, but not be limited to, the following:

      a.    AT&T Illinois and other subsidiaries of AT&T Inc. shall fully and truthfully cooperate in any matter in which they are called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois.

      b.    AT&T Illinois and other subsidiaries of AT&T Inc. shall truthfully and in a timely manner disclose all factual information with respect to their activities, those of their subsidiaries and those of their present and former directors, officers, employees, agents, lobbyists and consultants, including any evidence or allegations and internal or external investigations, about which the government may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of AT&T Illinois to promptly provide to the government, upon request, any non-privileged document, record or other tangible evidence about which the government may inquire.

c.     Upon request of the government, AT&T Illinois or other subsidiaries of AT&T Inc. shall designate knowledgeable employees, agents, or attorneys to provide to the government the information and materials described above on behalf of AT&T Illinois. It is further understood that AT&T Illinois and other subsidiaries of AT&T Inc. must at all times provide complete, truthful, and accurate information.

d.     AT&T Illinois shall use its best efforts to make available for interviews or testimony, as requested by the government, present or former officers, directors, employees, agents, lobbyists and consultants of AT&T Illinois and other subsidiaries of AT&T Inc. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with law enforcement and regulatory authorities. Cooperation shall include identification of witnesses who, to the knowledge of AT&T Illinois or other subsidiaries of AT&T Inc., may have material information regarding the matters under investigation.

e.     With respect to any information, testimony, documents, records or other tangible evidence provided to the government pursuant to this Agreement, AT&T Illinois consents to any and all disclosures to other governmental authorities of such materials as the government, in its sole discretion, shall deem appropriate.

f.     Should AT&T Illinois learn of any evidence or allegation of its violation of U.S. criminal law, AT&T Illinois shall promptly report such evidence or allegation to the government. On the date that the Term expires, AT&T Illinois, by a senior executive compliance officer, will certify to the government that AT&T Illinois has met its disclosure obligations pursuant to this Agreement. Each certification will

5

be deemed a material statement and representation by AT&T Illinois to the executive branch of the United States for purposes of 18 U.S.C. § 1001.

8.      AT&T Illinois agrees that its obligations to cooperate under the terms set forth in this Agreement will continue even after the two-year term of this Agreement and the dismissal of the Information, and AT&T Illinois and subsidiaries of AT&T Inc. will continue to fulfill the cooperation obligations set forth in this Agreement in connection with any related investigation, criminal prosecution, or civil proceeding brought by the government related to the conduct set forth in the Information or the Statement of Facts.

### Payment of Monetary Penalty

9.      The government and AT&T Illinois agree that the application of the 2021 U.S. Sentencing Guidelines ("Guidelines") to determine the applicable fine range yields the following:

a.      Offense level. Based upon Guideline §§ 2C1.1 and 2E1.2(a)(2), the total offense level is 36, calculated as follows:

| | |
|---|---|
| §2C1.1(a)(2) Base Offense Level | 12 |
| §2C1.1(b)(2) Value of the benefit to be received was greater than $9,500,000 | +20 |
| §2C1.1(b)(3) Involvement of an elected public official in a high-level decision-making or sensitive position | +4 |
| TOTAL | 36 |

b.      Base fine. Based upon Guideline § 8C2.4, the base fine is $80,000,000.

      c.    <u>Culpability score.</u> Based upon Guideline § 8C2.5, the Culpability Score is 8, calculated as follows:

| | |
|---|---|
| §8C2.5(a) Base Culpability Score | 5 |
| §8C2.5(b) AT&T Illinois had more than 5,000 employees, and high-level personnel participated in and condoned the offense | +5 |
| §8C2.5(b) AT&T Illinois fully cooperated in the investigation and clearly demonstrated acceptance of responsibility | -2 |
| TOTAL | 8 |

      d.    <u>Calculation of Fine Range</u>. Based upon Guideline § 8C2.6, the fine range is calculated as follows:

| | |
|---|---|
| Base fine | $80,000,000 |
| Minimum multiplier | 1.6 |
| Maximum multiplier | 3.2 |
| FINE RANGE | $128,000,000 - $256,000,000 |

10.    The fine range under the U.S. Sentencing Guidelines overstates the financial significance of AT&T Illinois's misconduct because the total financial benefit AT&T Illinois would receive in future years is (i) difficult to calculate, (ii) subject to advances in technology that have subsequently diminished the future value of the unlawful conduct described in the Statement of Facts, and (iii) contingent upon further federal regulatory approvals that may not be granted. Taking these factors into account, as well as AT&T Illinois's remediation and cooperation as set forth in

this Agreement, the parties agree that a discount of the applicable United States Sentencing Guideline range is appropriate, and that the appropriate total criminal penalty is $23,000,000. AT&T Illinois shall be responsible for paying $23,000,000 to the Crime Victims Fund (CVF) within thirty (30) days of the filing of this Agreement. Nothing in the Agreement shall be deemed an agreement regarding a maximum penalty that may be imposed in any future prosecution, and the government is not precluded from arguing in any future prosecution that the Court should impose a higher fine, disgorgement or civil or criminal forfeiture, although the government agrees that under those circumstances, it will recommend to the Court that any amount paid under this Agreement should be offset against any fine imposed as part of a future judgment. AT&T Illinois agrees that no tax deduction may be sought in connection with the payment of any part of the fine, and AT&T Illinois may not seek to recover any portion of the fine through surcharges, fees or any other charges to customers. AT&T Illinois shall not seek or accept directly or indirectly reimbursement or indemnification from any source other than another subsidiary of AT&T Inc. with regard to the fine amount or any other amount it pays pursuant to any other agreement entered into with an enforcement authority or regulator concerning the facts set forth in the Statement of Facts.

11.     The government agrees, except as provided in this Agreement, that it will not bring any criminal or civil case (except for criminal tax violations, as to which the government does not make any agreement) against AT&T Illinois or any of its present or former parents and subsidiaries or affiliates relating to any of the conduct described in the attached Statement of Facts or in the documents produced by AT&T

8

Illinois to the government during the investigation, or to conduct otherwise disclosed to the government by AT&T Illinois in the investigation or to conduct known to the government as of the date of this Agreement. The government, however, may use any information related to the conduct described in the attached Statement of Facts against AT&T Illinois or any of its present or former parents and subsidiaries or affiliates: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; or (c) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code. This Agreement does not provide any protection against prosecution for any future conduct by AT&T Illinois or any of its present or former parents or subsidiaries. In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with AT&T Illinois or with any of its present or former parents or subsidiaries.

### Remediation, Corporate Compliance Program, and Reporting

12.     AT&T Illinois and other subsidiaries of AT&T Inc. have engaged in significant remedial measures to enhance their compliance programs, including taking steps to ensure that the parties AT&T Illinois identified as participating in the conduct at issue are no longer employed by or have a relationship with AT&T Illinois or any subsidiary of AT&T Inc.; and by implementing new compliance policies that, among other things: (a) require internal tracking and reporting of anything of value requested or solicited by, or provided to, public officials; (b) establish due diligence and ongoing monitoring requirements for all third parties engaged in political consulting or lobbying activities; (c) prohibit subcontracting of third party

lobbyists and political consultants without prior written consent; (d) mandate that the hiring of all third party lobbyists and political consultants must be approved by legal and senior management outside of AT&T Illinois; and (e) require ongoing monitoring of all third party lobbyists and political consultants to ensure they are providing value to the business.

13.     AT&T Illinois represents that it and other relevant subsidiaries of AT&T Inc. have implemented and will continue to implement a compliance and ethics program designed to prevent and detect violations of U.S. law throughout their operations, including those of their subsidiaries, agents, and joint ventures, and those of their contractors and subcontractors (to the extent subcontractors are permitted) whose responsibilities include accounting, financial reporting, lobbying, government relations, consulting, and interactions with AT&T Illinois's auditors, including, but not limited to, the minimum elements set forth in Attachment B (Corporate Compliance Program). In addition, AT&T Illinois agrees that it will report to the government annually during the Term regarding remediation and implementation of the compliance measures described in Attachment B. These reports will be prepared in accordance with Attachment C (Corporate Compliance Reporting).

14.     To address any compliance deficiencies, AT&T Illinois represents that it and other relevant subsidiaries of AT&T Inc. have undertaken, and will continue to undertake in the future, in a manner consistent with all of their obligations under this Agreement, a review of their existing internal controls, policies, and procedures regarding compliance with U.S. law. Where necessary and appropriate, AT&T Illinois agrees to adopt a new compliance program, or to modify its existing one, including

internal controls, compliance policies, and procedures to ensure that it maintains a rigorous compliance program that incorporates relevant internal controls, as well as policies and procedures designed to effectively deter and detect violations of U.S. law. The compliance program will include, but not be limited to, the minimum elements set forth in Attachment B.

## Deferred Prosecution

15.    In consideration of: (a) AT&T Illinois's past and future cooperation as described above; (b) AT&T Illinois's payment of a monetary penalty of $23,000,000; (c) AT&T Illinois's adoption and maintenance of remedial measures, and review and audit of such measures, including the compliance undertakings described in Attachment B, the government agrees to request that the United States District Court for the Northern District of Illinois defer proceedings on the charge in the Information pursuant to Title 18, United States Code, Section 3161(h)(2), for the Term of this Agreement.

16.    The government further agrees that if AT&T Illinois fully complies with all of its obligations under this Agreement, the government will not continue the criminal prosecution against AT&T Illinois described in Paragraph 1. Within thirty (30) days of the successful completion of the Term, the government shall seek dismissal of the Information filed against AT&T Illinois.

## Breach of the Agreement

17.    If, during the Term, (a) AT&T Illinois commits any felony under U.S. law; (b) AT&T Illinois provides in connection with this Agreement deliberately false, incomplete, or misleading information, including in connection with a disclosure of

information about individual culpability; (c) AT&T Illinois fails to implement a compliance program as set forth in this Agreement and Attachment B; or (d) AT&T Illinois otherwise fails to completely perform or fulfill each of its obligations under the Agreement; or if at any time AT&T Illinois fails to cooperate as set forth in this Agreement regardless of whether the government becomes aware of such a breach after the Term is complete, AT&T Illinois shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including, but not limited to, the conduct described in the attached Statement of Facts, which may be pursued by the government in the U.S. District Court for the Northern District of Illinois or any other appropriate venue. Determination of whether AT&T Illinois has breached the Agreement and whether to pursue prosecution of AT&T Illinois shall be in the government's sole discretion. AT&T Illinois understands and acknowledges that it will have breached this agreement if AT&T Inc. or any of its current or future subsidiaries fails to abide by the obligations AT&T Illinois has under paragraphs 7, 8, 12, 13, 14, and 20 of this Agreement, and that AT&T Inc. has been apprised accordingly. Any such prosecution may be premised on information provided by AT&T Illinois or its affiliates. Any such prosecution relating to the conduct described in the attached Statement of Facts or relating to conduct known to the government prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against AT&T Illinois or its affiliates, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, AT&T Illinois agrees that the statute of

limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year. In addition, AT&T Illinois agrees that the statute of limitations as to any violation of U.S. law that occurs during the Term will be tolled from the date upon which the violation occurs until the earlier of the date upon which the government is made aware of the violation or the duration of the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

18.    In the event the government determines that AT&T Illinois has breached this Agreement, the government agrees to provide AT&T Illinois with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty (30) days of receipt of such notice, AT&T Illinois shall have the opportunity to respond to the government in writing to explain the nature and circumstances of such breach, as well as the actions AT&T Illinois has taken to address and remediate the situation, which explanation the government shall consider in determining whether to pursue prosecution of AT&T Illinois.

19.    In the event that the government determines that AT&T Illinois has breached this Agreement: (a) all statements made by or on behalf of AT&T Illinois or its present or former parents or subsidiaries to the government or to the Court, including the attached Statement of Facts, and any testimony given by AT&T Illinois or its present or former parents or subsidiaries before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads or evidence derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the

13

government against AT&T Illinois or its present or former parents or subsidiaries; and (b) AT&T Illinois or its present or former parents or subsidiaries shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of AT&T Illinois or its present or former parents or subsidiaries prior or subsequent to this Agreement, or any leads or evidence derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, AT&T Illinois or its present or former parents or subsidiaries, will be imputed to AT&T Illinois for the purpose of determining whether AT&T Illinois has violated any provision of this Agreement shall be in the sole discretion of the government.

## Statements by AT&T Illinois

20.     AT&T Illinois expressly agrees that neither it, AT&T Inc., nor any other subsidiary of AT&T Inc. will, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for AT&T Illinois or any other subsidiary of AT&T Inc., make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by AT&T Illinois set forth above or the facts described in the attached Statement of Facts. AT&T Illinois agrees that if it or any of its present or former affiliates or subsidiaries issues a press release or holds any press conference in connection with this Agreement, AT&T Illinois shall first consult the government to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters

relating to this Agreement; and (b) whether the government has any objection to the release. AT&T Illinois agrees that any public statement it, AT&T Inc. or any subsidiary of AT&T Inc. makes contradicting the acceptance of responsibility by AT&T Illinois set forth above or the facts described in the attached Statement of Facts shall cause AT&T Illinois to be in breach of this Agreement for, at minimum, failing to prevent the statement from being made, regardless of whether AT&T Illinois approved the statement.

## Limitations on Binding Effect of Agreement

21.    This Agreement is binding on AT&T Illinois and the government but specifically does not bind (i) any component of the Department of Justice other than the United States Attorney's Office for the Northern District of Illinois, (ii) other federal agencies, (iii) any state, local or foreign law enforcement or regulatory agencies, or (iv) any other authorities, although the government will bring the cooperation of AT&T Illinois and its compliance with its obligations under this Agreement to the attention of such agencies and authorities if requested to do so by AT&T Illinois.

## Changes in Corporate Form

22.    Except as may otherwise be agreed by the government and AT&T Illinois in connection with a particular transaction, AT&T Illinois agrees that in the event that, during the term of any of its obligations under this Agreement, it undertakes any change in corporate form, including if it sells, merges, or transfers business operations that are material to AT&T Illinois's consolidated operations, as they exist as of the date of this Agreement, whether such change is structured as a

15

sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. The purchaser or successor in interest must also agree in writing that the government's ability to determine there has been a breach under this Agreement is applicable in full force to that entity. AT&T Illinois agrees that the failure to include this Agreement's breach provisions in the transaction will make any such transaction null and void. AT&T Illinois shall provide notice to the government at least thirty (30) days prior to undertaking any such sale, merger, transfer, or other change in corporate form. The government shall notify AT&T Illinois prior to such transaction (or series of transactions) if it determines that the transaction(s) will have the effect of circumventing or frustrating the enforcement purposes of this Agreement. If at any time during the Term AT&T Illinois engages in a transaction(s) that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the government may deem it a breach of this Agreement pursuant to the breach provisions of this Agreement. Nothing herein shall restrict AT&T Illinois from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the government.

16

### Notice

23.     Any notice to the government under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to the Chief, Public Corruption and Organized Crime Section, United States Attorney's Office, 219 South Dearborn Street, Fifth Floor, Chicago, IL 60604. Any notice to AT&T Illinois shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to AT&T General Counsel, 208 South Akard Street, Dallas, Texas 75202.

### Complete Agreement

24.     This Agreement sets forth all the terms of the agreement between AT&T Illinois and the government.  No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the government, the attorneys for AT&T Illinois, and a duly authorized representative of AT&T Illinois.

Date: Oct. 5, 2022       BY:  _____
                              JOHN R. LAUSCH, JR.
                              United States Attorney
                              Northern District of Illinois

                              AMARJEET S. BHACHU
                              Chief, Public Corruption and
                              Organized Crime Section
                              Northern District of Illinois

                              SARAH E. STREICKER
                              Chief, General Crimes Section
                              Northern District of Illinois

                              DIANE MacARTHUR
                              TIMOTHY J. CHAPMAN
                              Senior Litigation Counsel
                              Northern District of Illinois

                              MICHELLE KRAMER
                              JULIA K. SCHWARTZ
                              Assistant United States Attorneys
                              Northern District of Illinois

18

AGREED AND CONSENTED TO:

Date: _10/5/22_          BY: _____
                             DAVID R. McATEE II
                             Senior Executive Vice President
                             and General Counsel
                             on behalf of Illinois Bell
                             Telephone Company LLC
                             d/b/a AT&T Illinois

Date: _10.5.22_          BY: _____
                             ERIN NEALY COX, P.C.
                             Kirkland & Ellis, LLC

                             MARK FILIP, P.C.
                             Kirkland & Ellis, LLC

                             BRIAN BENCZKOWSKI, P.C.
                             Kirkland & Ellis, LLC

                             STEVE FAHEY
                             Kirkland & Ellis, LLC

                             Counsel for Illinois Bell
                             Telephone Company, LLC
                             d/b/a AT&T Illinois

## CORPORATE OFFICER'S CERTIFICATE

I have read this Agreement and carefully reviewed every part of it with outside counsel for Illinois Bell Telephone Company, LLC ("AT&T Illinois"). I understand the terms of this Agreement and voluntarily agree on behalf of AT&T Illinois, to each of its terms. Before signing this Agreement, I consulted outside counsel for AT&T Illinois. Counsel fully advised me of the rights of AT&T Illinois, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the AT&T Inc. Board of Directors. I have advised and caused outside counsel for AT&T Illinois to advise the AT&T Inc. Board of Directors fully of the rights of AT&T Illinois, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement. No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of AT&T Illinois, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am an officer of AT&T Inc. and that I have been duly authorized by AT&T Illinois to execute this Agreement on behalf of AT&T Illinois.

Date: _10/5/22_          BY: _____

DAVID R. McATEE II
Senior Executive Vice President
and General Counsel
on behalf of Illinois Bell
Telephone Company, LLC
d/b/a AT&T Illinois

20

## CERTIFICATE OF COUNSEL

We are counsel for Illinois Bell Telephone Company, LLC ("AT&T Illinois") and AT&T Inc. ("AT&T Inc.") in the matter covered by this Agreement. In connection with such representation, we have examined relevant AT&T Illinois and AT&T Inc. documents and have discussed the terms of this Agreement with the AT&T Inc. Board of Directors. Based on our review of the foregoing materials and discussions, we are of the opinion that the representative of AT&T Illinois has been duly authorized to enter into this Agreement on behalf of AT&T Illinois, and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of AT&T Illinois and is a valid and binding obligation of AT&T Illinois. Further, we have carefully reviewed the terms of this Agreement with the AT&T Inc. Board of Directors. We have fully advised them of the rights of AT&T Illinois, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into this Agreement. To our knowledge, the decision of AT&T Illinois to enter into this Agreement, is an informed and voluntary one.

Date: __10 · 5 · 22__          BY: _____

ERIN NEALY COX, P.C.
MARK FILIP, P.C.
Kirkland & Ellis, LLC

Counsel for Illinois Bell
Telephone Company, LLC
d/b/a AT&T Illinois

21

# ATTACHMENT A

## STATEMENT OF FACTS

The following Statement of Facts is incorporated by reference as part of the Deferred Prosecution Agreement (the "Agreement") between the United States Attorney's Office for the Northern District of Illinois, and Illinois Bell Telephone Company, LLC d/b/a AT&T Illinois, formerly known as Illinois Bell Telephone Company d/b/a AT&T Illinois ("AT&T Illinois"). AT&T Illinois hereby agrees and stipulates that the following information is true and accurate. AT&T Illinois admits, accepts, and acknowledges that it is responsible for the acts of its current and former officers, directors, employees, and agents as set forth below.

## I.    Background

AT&T Illinois is an Illinois limited liability company that provides regulated wireline and other communications services in Illinois, with offices in Chicago and Springfield, Illinois. AT&T Illinois is subject to extensive regulation by the State of Illinois.

The legislative branch of the State of Illinois, known as the Illinois General Assembly, has routinely considered bills and passed legislation that has had a substantial impact on AT&T Illinois's operations and profitability. In order for legislation to become law, it must be passed by both houses of the Illinois General Assembly—the Illinois House of Representatives and the Illinois Senate.

For example, in 2017, the Illinois General Assembly passed legislation advocated by AT&T Illinois that provided one step needed to terminate AT&T Illinois' costly obligation to provide landline telephone services to all Illinois residents. This legislation, which was commonly referred to as carrier of last resort ("COLR") legislation, first passed the Illinois General Assembly as part of Senate Bill 1839, on or about May 31, 2017, but was vetoed by the Governor of the State of Illinois. Another version of the COLR legislation, contained in House Bill 1811, was passed by the General Assembly, and it was again vetoed by the Governor. Thereafter, in or around July 2017, both houses of the Illinois General Assembly voted to override the Governor's veto of House Bill 1811.

During the relevant timeframe, AT&T Illinois had a continuing interest in advancing legislation in the General Assembly favorable to its interests and opposing legislation that was not consistent with its operational and financial success.

In 2017, Michael J. Madigan was the Speaker of the Illinois House of Representatives and the longest serving member of the House of Representatives. AT&T Illinois understood that, as Speaker of the House of Representatives, Madigan was able to exercise control over what measures were called for a vote in the House of Representatives and had substantial influence and control over fellow lawmakers concerning legislation, including legislation that affected AT&T Illinois. Madigan was an agent of the State of Illinois, a State government that during 2017 received federal benefits in excess of $10,000.

Michael McClain served in the Illinois House of Representatives for approximately ten years beginning in 1972. After McClain's service in the Illinois House of Representatives, McClain served as a lobbyist and/or consultant until 2019.

From at least 2015 to 2018, McClain acted on Madigan's behalf, by, among other things, (i) making requests to third parties, such as corporate executives, for jobs and payments to be made to Madigan's political allies, workers, and associates; and (ii) conveying Madigan's instructions and messages to public officials and business executives, including but not limited to instructions on whether Madigan wished to support, advance, or hold legislation pending before the General Assembly.

President-1 was the president of AT&T Illinois from between in or around 2006 and in or around December 2018. As president, President-1 was responsible for the company's regulatory, legislative, and community relations initiatives.

Individual ATT-1 and Individual ATT-2 were each employed by AT&T Illinois as an Assistant Vice President of Legislative Affairs. Individual ATT-3 was employed by AT&T Illinois as a Director of Legislative Affairs. Intermediary 4 was the owner of Company 4, which performed lobbying services for AT&T Illinois.

## II. Conduct

### Overview

In 2017, in an effort to influence and reward Madigan's efforts, as Speaker of the Illinois House of Representatives, to assist AT&T Illinois with respect to legislation concerning AT&T Illinois and its business, namely, the COLR legislation, AT&T Illinois arranged for Individual FR-1 to indirectly receive payments from AT&T Illinois totaling $22,500, even though Individual FR-1 did no work in return for such payments. AT&T disguised the true nature of the payments, and utilized an interstate facility in order to promote and facilitate Madigan's legislative misconduct as further described below.

### Hiring of Individual FR-1 Who Performed No Work for AT&T Illinois

AT&T Illinois knew that Madigan's support was essential to their legislative success, as the Speaker's Office had prevented their COLR legislation from moving forward in previous years, including in 2015. After AT&T Illinois had failed to secure COLR relief in 2015, Individual ATT-1 circulated a document called "2015 Lesson[s] Learned, Setting the Stage for the 2017 Modernization Campaign," in which one "lesson learned" under the heading "Speaker Madigan" was: "AT&T is not as 'helpful' when requests are made as Commonwealth Edison."

Beginning no later than in or around 2017, AT&T Illinois understood that Madigan and McClain sought to obtain from AT&T Illinois monetary payments for Individual FR-1, who was a political ally of Madigan's. After this, AT&T Illinois, together with President-1, Individual ATT-1, Individual ATT-2, Individual ATT-3, Individual 4, and Company 4, arranged for indirect monetary payments to be provided to Individual FR-1 through Company 4. Monthly payments to Company 4, intended for Individual FR-1, began in June 2017, and continued until in or around January 2018, even though Individual FR-1 did no work for AT&T Illinois in return for these payments.

On or about February 14, 2017, McClain sent an email to Individual ATT-1 asking for "a small contract" for Individual FR-1. Two days later, McClain advised President-1 that Madigan had assigned McClain as a "special project" to work on the COLR legislation AT&T Illinois sought to advance during the General Assembly's 2017 legislative session.

On or about March 28, 2017, President-1 sent an email to Individual ATT-1 and Individual ATT-3 in which President-1 wrote that McClain had called to ask if AT&T

Illinois had $2,500 or $3,000 per month for a "small contract" for Individual FR-1. President-1 advised Individuals ATT-1 and ATT-3 that AT&T Illinois had received a "GO order" to hire Individual FR-1.

On or about March 31, 2017, President-1 wrote an email in which President-1 advised Individuals ATT-1, ATT-2, and ATT-3 that President-1 had no objection to paying Individual FR-1 through an intermediary as a consultant, instead of directly as a lobbyist, "as long as you are sure we will get credit and the box checked."

On or about March 31, 2017, Individual ATT-3 wrote an email in which Individual ATT-3 asked Individual ATT-1 and Individual ATT-2 the following about hiring Individual FR-1 through an intermediary as a consultant: "[A]re we 100% certain that we will get credit for being responsive?" and added, "I think remaining question is if we would get credit from the powers that be." On or about March 31, 2017, Individual ATT-2 responded, "I would hope that as long as we explain the approach to McClain and [Individual FR-1] gets the money then the ultimate objective is reached." On or about March 31, 2017, Individual ATT-3 responded, "I don't think [President-1] wants this based on 'hope.' We need to confirm prior to executing this strategy."

On or about April 5, 2017, in connection with the payment of Individual FR-1, Individual ATT-3 sent an email to another AT&T Illinois employee in support of increasing the monthly payment made to Company 4, so that Company 4 could in turn pay Individual FR-1 $2,500 a month for the remainder of 2017. This email was designed to conceal the nature and source of the payments to Individual FR-1 and to prevent detection of the illegal activity. Specifically, the email stated that the additional money to be paid to Company 4 was to allow Intermediary 4 to bring "on an

A-5

additional asset" who would "make a difference for strategies associated with House Democratic Leadership views on advancing AT&T strategies for 2017 COLR legislation." This justification did not disclose that the additional money would be paid to Individual FR-1, whose services were not required by AT&T Illinois, and who performed no work for AT&T Illinois. In truth and fact, Individual FR-1 had no actual or anticipated role in strategy to pass COLR legislation and the payments to Individual FR-1 were intended to influence and reward Madigan in connection with the COLR legislation.

On or about April 20, 2017, President-1 signed a contract amendment on behalf of AT&T Illinois that increased compensation to Company 4 by $2,500 per month for April 2017 through December 2017. Individual FR-1 was not mentioned in the contract amendment.

On or about April 26, 2017—after Company 4's contract had been amended so that AT&T Illinois could make indirect payments to Individual FR-1—Individual ATT-2, Individual ATT-3, and Intermediary 4, at McClain's direction, met with Individual FR-1 for the first time to discuss paying Individual FR-1 $2,500 per month and to discuss why Individual FR-1 would be receiving the payments. AT&T Illinois employees formulated a pretextual assignment for Individual FR-1, namely, that he was to prepare a report on the political dynamics of the General Assembly's and the City of Chicago's Latino Caucuses.

On or about April 28, 2017, after Individual FR-1 initially rejected the proposed $2,500 monthly payments as insufficient, Individual ATT-1 contacted McClain and confirmed that McClain considered $2,500 per month as sufficient. On or about April 28, 2017, after McClain confirmed that payments to Individual FR-1 totaling $22,500

were sufficient, Individual FR-1 accepted AT&T Illinois's proposal.

From on or about June 1, 2017 through on or about January 31, 2018, AT&T Illinois caused nine payments to be made to Company 4 of $10,000 each, with $2,500 of each payment intended for Individual FR-1. Individual FR-1 did no work in return for the monetary payments from AT&T Illinois and did not complete the purported assignment. Moreover, no efforts were undertaken by AT&T Illinois to (i) ensure Individual FR-1 did work in return for the payments he received; (ii) recover the money paid to Individual FR-1 due to his failure do any work; or (iii) have another party complete the purported assignment given to Individual FR-1.

<u>Benefit to AT&T Illinois</u>

In 2017 and 2018, during the same timeframe that AT&T Illinois was making payments to Individual FR-1 for the purpose of influencing and rewarding Madigan, AT&T Illinois was also seeking Madigan's support for legislation that was beneficial to AT&T Illinois, including the COLR legislation.

On or about May 26, 2017, Madigan's office requested a complete roll call on Senate Bill 1839, which included the COLR legislation. On or about May 31, 2017, Madigan permitted Senate Bill 1839 to be brought to a vote in the House of Representatives and voted in favor of it. On or about June 29, 2017, after the COLR legislation had been added as an amendment to House Bill 1811, Madigan permitted House Bill 1811 to be brought to a vote and voted in favor of House Bill 1811. On or about July 1, 2017, Madigan permitted a vote to override the Governor's veto of House Bill 1811 to be held in the House of Representatives, and voted to override the Governor's veto of House Bill 1811.

<u>AT&T Illinois' Use of an Interstate Facility to Promote Unlawful Activity</u>

AT&T Illinois caused the use of a facility in interstate commerce, namely, an email account and associated communication network operated by AT&T, intending to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of an unlawful activity, namely, a violation of Chapter 720 Illinois Compiled Statutes § 5/33-8 (legislative misconduct).

Specifically, and as discussed above, on or about March 31, 2017 at approximately 9:47 a.m., President-1 wrote an email in which he advised Individuals ATT-1, ATT-2, and ATT-3 that he had no objection to paying Individual FR-1 through an intermediary as a consultant, instead of directly as a lobbyist, "as long as you are sure we will get credit and the box checked." President-1 sent this email, to, among other things, promote, manage, establish, carry on, and facilitate Madigan's indirect receipt of a thing of value from AT&T Illinois, namely, payments to be made to Individual FR-1, in exchange for Madigan's vote and influence over a bill involving COLR relief.

## ATTACHMENT B

## CORPORATE COMPLIANCE PROGRAM

Recognizing the remedial measures undertaken by Illinois Bell Telephone Company, LLC ("AT&T Illinois") set forth in the Deferred Prosecution Agreement, AT&T Illinois agrees to continue to conduct, in a manner consistent with all of its obligations under this Agreement, appropriate reviews of its existing internal controls, policies, and procedures and to address any deficiencies in its internal controls, compliance code, policies, and procedures regarding compliance with U.S. law.

Where necessary and appropriate, AT&T Illinois agrees to modify its compliance program, including internal controls, compliance policies, and procedures to ensure that it maintains an effective system of internal accounting controls designed to ensure the making and keeping of fair and accurate books, records, and accounts, as well as policies and procedures designed to effectively detect and deter violations of U.S. law. At a minimum, this should include, but not be limited to, the following elements to the extent they are not already part of AT&T Illinois's existing internal controls, compliance code, policies, and procedures:

*High-Level Commitment*

1. AT&T Illinois will ensure that its senior management provide strong, explicit, and visible support and commitment to its corporate policy against violations of U.S. law and its compliance code.

*Policies and Procedures*

2.     AT&T Illinois will develop and promulgate a clearly articulated and visible corporate policy against violations of U.S. law, which policy shall be memorialized in a written compliance code.

3.     AT&T Illinois will develop and promulgate compliance policies and procedures designed to reduce the prospect of violations of U.S. law and AT&T Illinois's compliance code, and AT&T Illinois will take appropriate measures to encourage and support the observance of ethics and compliance policies and procedures against violation of U.S. law by personnel at all levels of AT&T Illinois. These policies and procedures shall apply to all officers and employees and, where necessary and appropriate, outside parties including consultants and lobbyists acting on behalf of AT&T Illinois. AT&T Illinois shall notify all employees that compliance with the policies and procedures is the duty of individuals at all levels of the company.

4.     AT&T Illinois will ensure that it has a system of financial and accounting procedures, including a system of internal controls, reasonably designed to ensure the maintenance of fair and accurate books, records, and accounts. This system should be designed to provide reasonable assurances that transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and to maintain accountability for assets.

*Periodic Risk-Based Review*

5.      AT&T Illinois will develop these compliance policies and procedures on the basis of a periodic risk assessment addressing the individual circumstances of AT&T Illinois.

6.      AT&T Illinois shall review these policies and procedures no less than annually and update them as appropriate to ensure their continued effectiveness, taking into account relevant developments in the field and evolving international and industry standards.

*Proper Oversight and Independence*

7.      AT&T Illinois will assign responsibility to one or more senior corporate executives of AT&T Illinois or another subsidiary of AT&T Inc. for the implementation and oversight of AT&T Illinois's compliance code, policies, and procedures. Such corporate official(s) shall have the authority to report directly to independent monitoring bodies, including internal auditors, AT&T Inc.'s Board of Directors, or any appropriate committee of the Board of Directors, and shall have an adequate level of autonomy from management as well as sufficient resources and authority to maintain such autonomy.

*Training and Guidance*

8.      AT&T Illinois will implement mechanisms designed to ensure that its compliance code, policies, and procedures are effectively communicated to all officers, employees, and, where appropriate, agents and business partners including consultants and lobbyists. These mechanisms shall include: (a) periodic training for all officers, all employees in positions of leadership or trust, positions that require such training (e.g., internal audit, sales, legal, compliance, finance, and government

B-3

relations), and, where appropriate, agents and business partners including consultants and lobbyists; and (b) corresponding certifications by all such officers, employees, agents, and business partners certifying compliance with the training requirements.

9.      AT&T Illinois will maintain, or where necessary establish, an effective system for providing guidance and advice to officers, employees, and, where necessary and appropriate, agents and business partners including consultants and lobbyists, on complying with AT&T Illinois and AT&T Inc.'s compliance code, policies, and procedures, including when they need advice on an urgent basis.

*Internal Reporting and Investigation*

10.      AT&T Illinois will maintain, or where necessary establish, an effective system for internal and, where possible, confidential reporting by, and protection of, officers, employees, and, where appropriate, agents and business partners including consultants and lobbyists concerning violations of U.S. law or AT&T Illinois's compliance code, policies, and procedures.

11.      AT&T Illinois will maintain, or where necessary establish, an effective and reliable process with sufficient resources for responding to, investigating, and documenting allegations of violations of U.S. law or AT&T Illinois's compliance code, policies, and procedures.

*Enforcement and Discipline*

12.      AT&T Illinois will implement mechanisms designed to effectively enforce its compliance code, policies, and procedures, including appropriately incentivizing compliance and disciplining violations.

13.      AT&T Illinois will institute appropriate disciplinary procedures to

B-4

address, among other things, violations of U.S. law and AT&T Illinois's compliance code, policies, and procedures by AT&T Illinois's officers and employees. Such procedures should be applied consistently and fairly, regardless of the position held by, or perceived importance of, the officer or employee. AT&T Illinois shall implement procedures to ensure that where misconduct is discovered, reasonable steps are taken to remedy the harm resulting from such misconduct, and to ensure that appropriate steps are taken to prevent further similar misconduct, including assessing the internal controls, compliance code, policies, and procedures and making modifications necessary to ensure the overall compliance program is effective.

### Mergers and Acquisitions

14. AT&T Illinois will develop and implement policies and procedures for mergers and acquisitions requiring that AT&T Illinois conduct appropriate risk-based due diligence on potential new business entities.

15. AT&T Illinois will ensure that AT&T Illinois's compliance code, policies, and procedures regarding U.S. law apply as quickly as is practicable to newly acquired businesses or entities merged with AT&T Illinois and will promptly train the officers, employees, agents, and business partners consistent with Paragraph 8 above on AT&T Illinois's compliance code, policies, and procedures.

### Monitoring and Testing

16. AT&T Illinois will conduct periodic reviews and testing of its compliance code, policies, and procedures designed to evaluate and improve their effectiveness in preventing and detecting violations of U.S. law and AT&T Illinois's code, policies, and procedures, taking into account relevant developments in the field and evolving industry standards.

## ATTACHMENT C

## <u>REPORTING REQUIREMENTS</u>

Illinois Bell Telephone Company, LLC ("AT&T Illinois") agrees that it will report to the U.S. Attorney's Office for the Northern District of Illinois (the "government") periodically, at no less than twelve-month intervals during a two-year term, regarding remediation and implementation of the compliance program and internal controls, policies, and procedures described in Attachment B. During this two-year period, AT&T Illinois shall: (1) conduct an initial review and submit an initial report, and (2) conduct and prepare at least two follow-up reviews and reports, as described below:

a. By no later than one year from the date this Agreement is executed, AT&T Illinois shall submit to the government a written report setting forth a complete description of its remediation efforts to date, its proposals reasonably designed to improve its internal controls, policies, and procedures for ensuring compliance with U.S. law, and the proposed scope of the subsequent reviews. The report shall be transmitted to:

> Chief, Public Corruption and Organized Crime Section
> U.S. Attorney's Office for the Northern District of
> Illinois 219 South Dearborn Street, Fifth Floor
> Chicago, IL 60604

AT&T Illinois may extend the time period for issuance of the report with prior written approval of the government.

b. AT&T Illinois shall undertake at least one follow-up review and report, incorporating the views of the government on its prior review and report, to

further monitor and assess whether its policies and procedures are reasonably designed to detect and prevent violations of U.S. law.

      c.    The follow-up review and report shall be completed by no later than one year after the initial report is submitted to the government, and delivered to the government no later than thirty days before the end of the Term.

      d.    The reports will likely include proprietary, financial, confidential, and competitive business information. Moreover, public disclosure of the reports could discourage cooperation, impede pending or potential government investigations and thus undermine the objectives of the reporting requirement. For these reasons, among others, the reports and the contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the parties in writing, or except to the extent that the government determines in its sole discretion that disclosure would be in furtherance of the government's discharge of its duties and responsibilities or is otherwise required by law.

      e.    AT&T Illinois may extend the time period for submission of any of the follow-up reports with prior written approval of the government.